24802. CLARK v. SMITH, Warden.

ARGUED SEPTEMBER 10, 1968—DECIDED NOVEMBER 7, 1968—
REHEARING DENIED NOVEMBER 21, 1968.

*Peter E. Rindskopf, Howard Moore, Jr.*, for appellant.

*Arthur K. Bolton, Attorney General, Marion O. Gordon, Assistant Attorney General, B. D. Dubberly, Jr., Courtney Stanton, Deputy Assistant Attorneys General*, for appellee.

MOBLEY, Justice. William Patrick Clark was convicted of the offense of rape and sentenced to death, and on appeal to this court his conviction was affirmed. *Clark v. State*, 222 Ga. 802 (152 SE2d 692). His sentence was later commuted to life imprisonment. Thereafter he filed a petition for habeas corpus. After a hearing, he was remanded to the custody of the warden, and he appeals from this order, enumerating fourteen alleged errors.

█ Some of the alleged errors are almost identical with some of those enumerated in *Massey v. Smith*, 224 Ga. 721. The appellant here, as in the *Massey* case, is a white male. The *Massey* case decided, adversely to the contentions of the appellant in the present case, questions identical with alleged errors 1 and 2, complaining of the exclusion of persons of the Negro race, indigents, and women from the grand and traverse juries indicting and trying the appellant (see Headnote 1 in the *Massey* case); and alleged error 14, complaining that the court refused to admit certain evidence relating to the composition of the jury (see Headnote 2 in the *Massey* case).

█ Alleged error 4, contending that the sentence of death for the crime of rape is unconstitutional; 6, complaining that the Code section fixing the punishment for rape as death, unless the jury recommends mercy, is unconstitutional; and 7, contending that the sentencing of a white man to death for rape is arbitrary and erratic, were all decided, adversely to the contentions of the

appellant, by rulings in the *Massey* case, supra. (See Headnotes 3 and 4). Furthermore, in the present case the appellant's death sentence has been commuted to life imprisonment, and questions in connection with the imposition of a death sentence have no relevancy to his case.

■ In alleged error 3 the appellant contends that his sentence was illegal because the jury which sentenced him was composed exclusively of persons having no scruples against the imposition of capital punishment, all of those with such scruples having been eliminated pursuant to *Code* § 59-806 (4). In Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776), it was held that a death sentence cannot constitutionally be executed if imposed by a jury from which have been removed for cause those who are opposed to capital punishment or have conscientious scruples against imposing the death penalty. This case did not hold that the judgment of conviction was illegal, but only that the sentence of death returned by such a jury could not be executed. The appellant in this case has had his death sentence commuted to life imprisonment, and the sentence under which he is now serving is not illegal under the rulings in the Witherspoon case. See Bumper v. North Carolina, 391 U. S. 543 (88 SC 1788, 20 LE2d 797).

■ In assignments of error 5, 8, and 9, the appellant contends that he was denied due process of law and equal protection of the laws under the Federal Constitution because: he could only have been found fit to stand trial or be convicted under *Code* § 26-301, which is unconstitutionally vague and uncertain; he was directly tried on the issue of rape, when his confession raised clear inferences of lack of capacity and sanity, instead of being first tried on the issue of sanity alone; and the trial judge failed to charge the jury on the general issue of sanity despite the fact that his confession raised clear inferences of lack of capacity and sanity. Assignment of error 12 contends that his conviction violated the due process and equal protection clauses of the Federal Constitution because the trial judge refused to admit into evidence the deposition of Dr. C. Downing Tait on the question of the appellant's sanity.

The denial to an accused person of the right to an adjudication

as to whether he was insane at the time of the commission of an offense, or is insane at the time of the trial, is the denial of due process of law under the Fourteenth Amendment of the United States Constitution. Whelchel v. McDonald, 340 U. S. 122 (71 SC 146, 95 LE 141); Massey v. Moore, 348 U. S. 105 (75 SC 145, 99 LE 135); Pate v. Robinson, 383 U. S. 375 (86 SC 836, 15 LE2d 815). The Habeas Corpus Act of 1967 (Ga. L. 1967, pp. 835, 836; *Code Ann.* § 50-127) provides: "Rights conferred or secured by the Constitution of the United States shall not be deemed to have been waived unless it is shown that there was an intentional relinquishment or abandonment of a known right or privilege which relinquishment or abandonment was participated in by the party and was done voluntarily, knowingly and intelligently." We will therefore consider these enumerations of error to determine whether the appellant has been denied any right under the Fourteenth Amendment of the Constitution of the United States. See *Mobley v. Smith,* 224 Ga. 297 (161 SE2d 834).

The appellant was defended by court appointed counsel on his trial for rape. No plea of insanity was filed, no evidence was introduced on the question of his sanity, and no question was made on the appeal to this court as to the sanity of the appellant. There is no allegation in the petition for habeas corpus that the appellant was not adequately represented by counsel at the trial, or that he was insane at the time of the commission of the crime, or insane at the time of his trial. The contention made is that his confession, which was introduced in evidence, raised clear inferences of lack of capacity and sanity, and that it was therefore erroneous for the trial court to fail to try him separately on the issue of his sanity alone, and to fail to charge the jury on the issue of sanity. These assignments pertain only to the legality of the conviction under the evidence before the trial court.

The excerpts from the confession which are asserted to raise clear inferences of the appellant's insanity are as follows: "I refused on the ground that she would call the police and that I had already decided to commit the heinous crimes with which I now stand accused. . . This part of the crime was com-

mitted with the express intention of receiving the supreme penalty of the State of Georgia for this type of crime." Counsel for the appellant argues that these excerpts show that the appellant committed a capital felony for the purpose of receiving a death penalty, and that this suicidal intent raises an inference that he was insane.

This court has held in a civil case that: "Suicide will raise no presumption of insanity, and standing alone will not authorize a finding of insanity." *Boney v. Smallwood,* 202 Ga. 411, 415 (43 SE2d 271). The appellant made a coherent and intelligent confession of the crime committed. The statement in the confession evidencing a suicidal intent was not, within itself, sufficient to raise an issue of insanity so as to require the trial judge to charge on insanity.

Since there was no evidence of insanity on the appellant's trial, and he does not assert in his habeas corpus petition that he was insane at the time of the commission of the offense, he has no standing to question the constitutionality of *Code* § 26-301, or to contend that he should have had a separate trial (for which there is no provision in Georgia law) on the issue of sanity at the time of the commission of the crime. *Massey v. Smith,* Headnote 5, supra.

As previously stated, all of the allegations pertaining to insanity in the petition for habeas corpus relate to alleged errors on the trial for rape, and there is no allegation in the habeas corpus petition that the appellant was insane at the time of the commission of the offense, or at the time of his trial. The deposition of Dr. C. Downing Tait does not relate to any matter on the trial of the case but refers to a sanity hearing conducted after the appellant's conviction. The deposition was excluded from evidence because it had been taken in another case. It is unnecessary to decide whether it was properly excluded on the objection made, since the deposition has no relevancy to the allegations of the petition for habeas corpus.

■ Assignment of error 10 asserts that the appellant's conviction and sentence were unconstitutional, in violation of the due process and equal protection clauses of the Federal Constitution, because his confession was admitted in evidence without

the court ruling on its admissibility prior to sending it to the jury. Assignment 11 asserts that his conviction and sentence were unconstitutional under the due process and equal protection clauses of the Federal Constitution in that his confession was erroneously admitted into evidence without a showing that he had been properly apprised of his constitutional rights before making it.

An examination of the transcript of the trial shows that no question was made that the appellant's confession was coerced or involuntary. On his appeal, this court held in connection with his confession that "there was no objection made to such evidence upon the trial of the case, and the State's prima facie showing that the confession was voluntarily made was not rebutted in any way." *Clark v. State*, 222 Ga. 802 (2), supra.

The transcript of the trial for rape shows, concerning the confession, that: Detective B. S. Ivey testified that he went to North Carolina to return the appellant to DeKalb County, and that he witnessed the confession, which the appellant wrote himself; that no one offered the appellant the slightest hope of reward if he would write or sign the statement, nor was he placed in the slightest fear; that prior to writing the confession the appellant was advised by the witness that "he did not have to make any statement, further that he had the right to legal counsel if he so desired at that time, further, that the statement could be used in a court of law either for or against him"; and that he told the appellant he did not have to discuss his case in any way.

Counsel for the appellant contends that this showing as to the information given the appellant does not conform to the procedure outlined in Miranda v. Arizona, 384 U. S. 436, supra, wherein it was held that in order to make a confession admissible in evidence, a person in custody, prior to interrogation, must "be clearly informed that he has the right to remain silent, and that anything he says will be used against him in court; he must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation, and that, if he is indigent, a lawyer will be appointed to represent him." Hn. 1 (d).

In Johnson v. New Jersey, 384 U. S. 719 (88 SC 1772, 16 LE2d 882), the Miranda case was given prospective application only. The opinion in the Johnson case, at page 732, states: "All of the reasons set forth above for making *Escobedo* and *Miranda* nonretroactive suggest that these decisions should apply only to trials begun after the decisions were announced. Future defendants will benefit fully from our new standards governing in-custody interrogation, while past defendants may still avail themselves of the voluntariness test. Law enforcement officers and trial courts will have fair notice that statements taken in violation of these standards may not be used against an accused. Prospective application only to trials begun after the standards were announced is particularly appropriate here. Authorities attempting to protect the privilege have not been apprised heretofore of the specific safeguards which are now obligatory. Consequently they have adopted devices which, although below the constitutional minimum, were not intentional evasions of the requirements of the privilege. In these circumstances, to upset all of the convictions still pending on direct appeal which were obtained in trials preceding *Escobedo* and *Miranda* would impose an unjustifiable burden on the administration of justice."

The Miranda case was announced June 13, 1966. The appellant was tried June 14, 1966. We are thus faced with a situation where the accused was accorded all rights announced in Escobedo v. Illinois, 378 U. S. 478, supra, and substantially, but not all all of those announced in Miranda v. Arizona, 384 U. S. 436, supra. His trial was held at a time when the Miranda case had been orally announced, but prior to the time that the authorities attempting to safeguard his rights could have been apprised of those safeguards made obligatory by the Miranda decision. The appellant has never contended, and does not now contend, that his confession was coerced, or that he would not have given the confession if he had been told that he would be furnished a lawyer if he could not employ one because of his poverty.

In this situation, and confining the ruling strictly to the facts of the present case, we hold that the reasons given in Johnson v. New Jersey, supra, for giving prospective application only to

Miranda v. Arizona, supra, are applicable in the present case, and the conviction of the appellant will not be upset because of the rulings in Miranda v. Arizona, supra.

■ There is no merit in the contention that the appellant's conviction was illegal because no separate hearing, outside the presence of the jury, was held on the voluntariness of his confession, as required by Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908, 1 ALR3d 1205) (1964). It was held in Pinto v. Pierce, 389 U. S. 31, 32 (88 SC 192, 19 LE2d 31) (1967), that the United States Supreme Court "has never ruled that all voluntariness hearings must be held outside the presence of the jury, regardless of the circumstances. Jackson v. Denno, 378 U. S. 368 [supra] (1964), held that a defendant's constitutional rights are violated when his *challenged* confession is introduced without a determination by the trial judge of its voluntariness after an adequate hearing." (Emphasis supplied.)

The voluntariness of the appellant's confession was not challenged on the trial of his case, and there was no necessity for a separate hearing before the trial judge on the question of voluntariness.

■ Assignment of error 13 is as follows: "The order of the Superior Court of Tattnall County, dated May 9, 1968, overruling and denying appellant's motion to process his appeal *in forma pauperis* without payment of cost, in that said order denied appellant his right to due process and equal protection under the Fourteenth Amendment, United States Constitution."

The record does not show what cost the appellant was required to pay before his appeal was transmitted to this court. Obviously he was able in some manner to pay all that was required of him, because his appeal has been transmitted to this court and is proceeding in forma pauperis here. The record does not show that he has been denied due process of law or equal protection of the laws by any requirement that he pay costs in the trial court.

■ It does not appear that the trial judge erred in remanding the appellant to the custody of the warden.

*Judgment affirmed. All the Justices concur.*